523 P.2d 54

**The STATE of Arizona, Appellee,**

v.

**Jacqueline LOWERY, Appellant.**

**No. 2884.**

Supreme Court of Arizona,
In Banc.
June 4, 1974.
Rehearing Denied June 25, 1974.

Gary K. Nelson, Atty. Gen. by Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa Co. Public Defender by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment of guilty by the court sitting without a jury to the crime of murder in the second degree, and a sentence thereon of not less than ten nor more than twenty years in the Arizona State Prison. The prosecutor also alleged a prior conviction in Texas for murder which prior conviction was admitted by the defendant.

The defendant raises only one question on appeal and that is the alleged misconduct of her defense attorney.

The facts necessary for a determination of this matter on appeal are as follows. The testimony indicates that in the early morning of 5 July 1973 the defendant shot Issac Houston twice in the head while he was sitting in a station wagon at 2429 East Broadway, Phoenix, Arizona. One of the investigating officers testified that upon being shown Polaroid pictures of the deceased the defendant stated:

"Q   When you showed her those photographs, what response, if any, did she make?

"A   She made one response that she repeated over and over again while looking at the photographs, and this was, 'I did it. I did it. I did it.' Oh, I'm sorry. I'm wrong. I'm sorry.

"Q   Would you go ahead—

"A   May I correct that?

"Q   Yes, you may.

"A   No, I think the response was 'I did that? I did that?' It was in the form of a question.

"Q   Would you refer to your Departmental Report the precise wording of that, please?

"A   Yes. That response was 'I did that?' and it was in the form of a question to herself that I received the impression and she repeated it several times while looking at the photographs.

"Q   Several times?

"A   Yes.

"Q   And then what further response did she make, if any?

\*   \*   \*   \*   \*   \*

"[A]   She said, 'I don't remember shooting anyone, but if I did, I'll pay for it.' Then she added, 'I'll die.' She said, 'If he had a pistol and pulled it, I would have taken it away from him.' Then she said, 'If I did it, I'll pay the penalty.' Then the questioning went on to her condition that morning and the night prior."

At the trial the defendant elected to take the stand in her own behalf. At that time the following transpired on direct examination:

"Q   \*   \*   \*   You heard Sarge's testimony that you walked outside with him?

"A   No, I didn't.

"Q   Did you walk out after him?

"A   No.

"Q   Did you at any time go to his car?

"A   No.

"Q   Did you shoot him?

"A  Did I what?

"Q  Shoot this man.

"A  [Witness shakes head.]

"Q  Do you understand my question?

"A  Yes. You asked me did I shoot him.

"Q  Yes.

"A  No.

"Q  You did not do so?

"A  No.

"MR. LYDING: Your honor, could I ask for a recess, please? I know we just had one, but —

"THE COURT: Very well. We will stand at recess for approximately five minutes.

[Whereupon, the following proceedings were held in Chambers at 2:26 p. m.]

"MR. LYDING: I'd like to put on the record that I move to withdraw.

"THE COURT: State your reason.

"MR. LYDING: I cannot state the reason.

"THE COURT: Okay. The motion will be denied. Off the record.

[Whereupon, an off-the-record discussion was held.]

[Whereupon, the following proceedings were held in open court at 2:29 p. m.]

"THE COURT: The record may show the presence of the Defendant. You may proceed, Mr. Lyding.

"MR. LYDING: I don't have any further questions."

The defendant contends on appeal that by moving to withdraw at that time the attorney was indicating to the court that the defendant was lying when she denied shooting the victim and that this could not be erased from the mind of the trier of fact.

The record does not reflect the reasons why the defendant's attorney wished to withdraw, but we can surmise that he did not wish to assist the defendant in perjuring herself on the witness stand as the evidence strongly suggested she was doing when she denied under oath that she shot the victim. An attorney is an officer of the court and owes a duty both to the court and to his client. Often these duties are in conflict especially when a defendant takes the stand to testify in his or her own behalf and the attorney, based upon information obtained as a result of the confidential relationship between attorney and client, has reason to suspect that the client is not telling the truth under oath. The attorney's actions, in attempting to withdraw during trial, are not mandated by this court, nor do his actions appear to be common in this jurisdiction. The defendant's attorney apparently tried to follow the Standards for Criminal Justice of the American Bar Association. In the approved Draft, 1971, The Defense Function 7.7, the Standards with Commentary reads:

"7.7  Testimony by the defendant.

"(a)  If the defendant has admitted to his lawyer facts which establish guilt and the lawyer's independent investigation establishes that the admissions are true but the defendant insists on his right to trial, the lawyer must advise his client against taking the witness stand to testify falsely.

"(b)  If, before trial, the defendant insists that he will take the stand to testify falsely, the lawyer must withdraw from the case, if that is feasible, seeking leave of the court if necessary.

"(c)  If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises during the trial and the defendant insists upon testifying falsely in his own behalf, the lawyer may not lend his aid to the perjury. Before the defendant takes the stand in this circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court. The lawyer must confine his examination to identifying the witness as the defendant and permitting him to

make his statement to the trier or the triers of the facts; the lawyer may not engage in direct examination of the defendant as a witness in the conventional manner and may not later argue the defendant's known false version of facts to the jury as worthy of belief and he may not recite or rely upon the false testimony in his closing argument.

"*Commentary*

"The absolute prohibition against subornation of perjury, see section 7.5, *supra,* applies where the defendant himself wishes to testify. Hence, a lawyer should withdraw from the case rather than place himself in the position of offering a perjurious witness. However, often the lawyer confronted by this situation will not be able to withdraw, either because trial has begun or it is so close to trial that withdrawal would leave the client without counsel, or because the court declines to allow withdrawal."

And the Commentary goes on to suggest where the client insists on committing perjury:

"Because the lawyer may later have his conduct called into question when his client testifies against the advice of counsel, it is desirable that a record be made of the fact. However, if the trial judge is informed of the situation, the defendant may be unduly prejudiced, especially at sentencing, and the lawyer may feel that he is caught in a dilemma between protecting himself by making such a record and prejudicing his client's case by making it with the court. The dilemma can be avoided in most instances by making the record in some other appropriate manner, for example, by having the defendant subscribe to a file notation, witnessed, if possible, by another lawyer." Pages 274, 275, 276, 277.

Trial having started and the defendant having already taken the stand, we believe that once the defendant commenced to testify falsely the better practice would have been for the defendant's attorney to have refrained from further questioning in areas of possible perjury and make a record "in some appropriate manner."

Under the facts in the instant case, we find no prejudice. The matter was tried to the court without a jury. The evidence was strong against the defendant. A review of the record before this court indicates ample testimony and evidence, including the defendant's own admissions upon being shown a photograph of the defendant prior to trial, that counsel's conduct played very little, if any, part in the defendant's conviction by the court.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.